In re BOWEN.

UNITED STATES v. BAKER.

No. 8849.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 2, 1945.

Decided Oct. 16, 1945.

Homer R. Miller, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Herman H. Krekstein, of Philadelphia, Pa. (David Getz, of Allentown, Pa., and Herbert S. Leman, of New York City, on the brief), for appellee.

Fred B. Gernerd, of Allentown, Pa., for Trustee in Bankruptcy.

GOODRICH, Circuit Judge.

The present litigation contains the second and, we trust, the concluding chapter of the story begun in our decision In re Bowen, 3 Cir., 1943, 138 F.2d 22, certiorari denied Baker v. United States, 1944, 320 U. S. 799, 64 S.Ct. 430. Nominally a proceeding in bankruptcy, the controversy involves only a dispute between the United States and a judgment creditor of the bankrupt, named Henry Baker. In the former litigation we held two things. The first was that in spite of the wording of the statute (26 U.S.C.A.Int.Rev.Code, § 3675) the discharge of the Government's tax lien could be attacked if fraudulently obtained. The second thing decided was that the relief sought could be accorded by a court of bankruptcy. Following that decision the case went back to the referee. His orders struck off and vacated the discharge of the federal tax liens from the real estate of the bankrupt, reinstated the liens and instructed that the liens be satisfied and the federal taxes paid out of the funds in the trustee's hands. The District Court reversed, 1944, 58 F.Supp. 286, and the Government appeals.

When we said that a certificate discharging the Government's tax lien could be discharged for fraud we used no decorative or qualifying adjectives in describing the word. But the Government does not now claim that Baker, in making the application under § 3674(b) of the Internal Revenue Code, 53 Stat. 449, 26 U.S.C.A.Int.Rev. Code, § 3674(b), made misstatements of fact which he knew to be untrue. Instead, the argument is that the facts show that Baker was guilty of "constructive" fraud and the discharge of the lien is vulnerable on that basis.

One is conscious at once that this takes one skating on pretty thin ice. The language of the statute says that the "certificate of release * * * shall be held conclusive that the lien * * * is extinguished." Nevertheless, we said that fraud might be shown to void the release, going on what seemed to us then, and still does, the almost universal analogy as to the effect of fraud in transactions generally.

■ Proof having failed to show actual fraud, in which conclusion we are wholly in accord with the District Court, we are now asked to say that something else will do. That something else is made to sound like fraud by putting the word "constructive" in front of it. No better illustration could be found of the dangers involved in the slippery use of language. Constructive fraud, of course, is not fraud at all as both lawyers and laymen know and understand the term, but conduct which the courts regard as liability creating and which, therefore, has some of the consequences which actual fraud has. One may

say at the outset that this is not the kind of thing being talked about in the former opinion and certainly takes one a long way from any proposition there before the Court in dealing with the effect of peremptory and sweeping statutory language.

As we understand the Government's argument, the constructive fraud comes here because, it says, one who applies to have a tax lien cancelled enters into a relationship with the Government's taxing authorities which is fiduciary in its nature. The relationship is not precisely that of cestui que trust, and trustee, guardian and ward, or principal and agent, but it does involve fiduciary obligations. One of those obligations is to make full disclosure of what the applicant knows or what he could reasonably find out about the subject-matter of the application which he is making. The basis of the existence of this fiduciary obligation is that the Government has not appropriated money to investigate these claims, to hire expert appraisers and otherwise inform itself of the facts on which the discharge is sought. Therefore, it is argued, the duty devolves upon the lien holder.

■ Every lawyer is familiar with situations where the relationship of the parties is such that affirmative duties from one to the other are owed. If those duties are not performed a claim for damages arises. All this is well known and it is not made any clearer by calling failure to perform the duty constructive fraud when it has nothing to do with fraud at all.

Does an applicant for the removal of a tax lien assume such affirmative obligation? In answering the question it is relevant to look at the language in the Regulation governing the discharge of property from federal tax liens promulgated by the Treasury Department. See T.D. 4446, XIII—2 Cum.Bull. 578 (1934). Two paragraphs give directions respectively to the applicant and the Collector. As to the applicant the language is:

"Any person desiring that a certificate discharging property from a Federal tax lien be issued under the provisions of section 3186(c)4, should present to the collector of internal revenue charged with the assessment in respect of the tax, a written application requesting that the certificate be issued. Such application should give the reasons for the request, and should clearly describe the property with respect to which the discharge is desired. In support of the request, the applicant must furnish the collector with proof sufficient to establish satisfactorily the fair market value of the property, the amounts, character, and dates (both of execution and of record) of all encumbrances of record prior to the Federal lien, as well as the amount and character of any unrecorded encumbrances believed to be prior to the Federal lien (including information as to how and when all such encumbrances arose). Appropriate references must be made to the pages and volumes of the recording books in which any such encumbrances have been recorded."

As to the Collector it is said:

"The collector should review the proof, check the accuracy of all material statements made, and forward to the Commissioner a report of the case together with his recommendation. The collector's report should include a statement of the expenses of his office incident to the placing and discharging of the lien as well as his conclusions with respect to the fair market value of the property involved and the value of the Government's interest therein, viewed in the light of such fair market value and the amount of liens and encumbrances on the property believed to have priority over the lien of the United States. Information as to the nature and amount of such encumbrances sufficient to enable a determination to be made whether, as a matter of law, they actually have priority over the Government's lien, should be included in the report."

■ This language does not appear to us to create a situation where all the burden is on the applicant, and in which the Collector is to receive what the applicant gives him and rely on it for whatever action he takes. We think it undoubtedly puts a duty on the Collector for ascertainment of facts and the use of his own judgment in making his decision. We do not find here the sort of situation where, by reason of circumstances, one party is entitled to have from the other the performance of an affirmative obligation to acquire all available information and put it at the disposal of the other.

■ In the second place, if we should assume, for the purpose of discussion, that the situation between applicant and Collector is one imposing a fiduciary obligation on the applicant, we do not see what can be complained of in this case.

While it may well be, as Mr. Justice Holmes said, "Men must turn square corners when they deal with the Government", that does not mean they must lead the Government by the hand. Let us see, now, if this case does not ask for something pretty close to that. The Government contends that "The Commissioner was misled by [1] misstatements of value, [2] the manner in which the prior judgment liens were set up, [3] failure to set out the terms of the lease, [4] statements indicating that the rentals had been assigned for present and future indebtedness, whereas they had merely been pledged to secure mortgages on the property which were first and prior liens and [5] lack of information over the contest of the judgments," which if good would be prior to the Government liens. The pertinent question, however, is not the state of mind of the Commissioner, but whether Baker made complete and honest disclosure in his application for discharge of the tax liens. If he did, he has met his fiduciary obligation even if the Government did not fully realize the import of the information it had been given.

■■ The first charge is "misstatements of value" by Baker. Value is a matter of opinion. Baker attached to his application appraisals of the property in question by two real estate brokers; one evaluated at $308,600 and the other at $314,600. The honesty of these appraisers was never questioned. What, then, is the complaint? It seems to come in the fact that in this litigation, and at a later date, other witnesses testifying placed the value of the property at figures ranging from $434,700 to $475,000. Such wide variations are no surprise to a court which has occasion to see the evidence of value from experts in eminent domain cases. An applicant for a release cannot be responsible for submitting opinion testimony of value which runs the whole gamut of estimates from real estate appraisers. Nor can he be responsible for submitting an estimate which is "right," as the rightness of an estimate cannot be settled until the trier of the facts in litigation has reached its conclusion. What Government officials did on the question of value is described fully in the opinion of the District Court. We do not need to follow through on this point for we are considering only what Baker failed to do that he should have done. We do not find him violating any duty of disclosure in failing to produce more variations in the estimates of value submitted.

■ The Government's second allegation is that "the manner in which the prior judgment liens were set up" was misleading. One of the judgments was called the Marsh judgment. It was for $20,000. Its listing was accompanied by the following: "Note: this judgment represents a judgment bond which accompanied a mortgage in the just sum of $10,000.00." Similar notes were added to each of the judgment amounts representing judgment bonds. The disclosure was complete and truthful. The manner was not misleading, but rather the law of Pennsylvania seems to have been insufficiently comprehended by Government agents. But the fiduciary obligation which we are assuming, for purpose of discussion, hardly carries with it the duty to conduct legal education for Government counsel. There is nothing, therefore, in this point.

■ The Government's third contention is "failure to set out the terms of the lease". In the exhibits filed with the application the property was shown to be leased to S. S. Kresge Company, "said lease being recorded in the Recorder's Office at Allentown * * * in Miscellaneous Book Vol. 96, Page 43 etc. * * *". Can it be contended that the lease should have been set out when its existence is made known and the page and volume of the record where it may be found are set out? We think not. Government officers had the same access to public records as the applicant; and the reference to the record was complete and correct.

■ The fourth allegation made by the Government concerns the misleading character of "statements indicating that the rentals had been assigned for present and future indebtedness, whereas they had merely been pledged." The facts indicate that on July 16, 1928 Bowen made an assignment of rentals under the S. S. Kresge Co. lease. This assignment was without qualification and was recorded; the record citation was given in Baker's application. On the same day an unrecorded agreement was made that Lehigh Valley Trust Co., the assignee, should also hold the assignment of the lease as collateral security for all indebtedness of Bowen to the Trust Company, present or future. Upon payment of the indebtedness there was an

agreement to reassign the leasehold rights. Baker called the transaction an assignment. Whether it was assignment or pledge, copies of both documents in full were attached to Baker's application. It therefore actually made only nominal difference whatever he may have called the situation, since the facts of the matter were squarely before the Government in the copies of the documents mentioned.

█ Finally, the Government contends there was "lack of information over the contest of the judgments." The three judgments being contested were held valid and collectible on June 19, 1939 by the Supreme Court of Pennsylvania. Marsh v. Bowen, 335 Pa. 314, 6 A.2d 783. There is not enough basis here for the Government to rest its case. In the notes that Baker added to the recital of judgments, reference had been made to the institution of scire facias proceedings to revive and the dates were given. While answer had been filed this was not shown on the Baker application papers. But all relevant facts about that proceeding could have been learned simply by consulting public records since the reference to the judgment was accurately made.

We think it perfectly clear that even if we assume the existence of an affirmative obligation of disclosure upon Baker here, he met it. He was not a trustee dealing with an infant cestui but a citizen making application for a technical release to a highly specialized and technical department of government. He was certainly obligated to tell the truth. But he was not obligated to give a legal lecture upon the significance of the facts he disclosed.

The judgment of the District Court is affirmed.