Albert J. MILLER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. C–90–3132 MHP.

United States District Court, N.D. California.

May 6, 1991.

Theodore A. Kolb and Jon B. Sigerman, Sullivan, Roache & Johnson, San Francisco, Cal., for plaintiff.

William T. McGivern, Jr., U.S. Atty., and Jay R. Weill, Asst. U.S. Atty., Chief, Tax Div., San Francisco, Cal., for defendant.

## OPINION

PATEL, District Judge.

Plaintiff Albert J. Miller ("Miller") brings this action against defendant United States of America ("Government") seeking: a) damages for failure to release a lien pursuant to 26 U.S.C. § 7432; b) reimbursement of attorneys' fees under 26 U.S.C. § 7430; and c) damages for unauthorized collection actions pursuant to 26 U.S.C. § 7433. The Government now moves for summary judgment on the section 7432 and 7433 claims. For the reasons discussed below, the Government's motion is DENIED.

## BACKGROUND

This case concerns an Internal Revenue Service ("IRS") assessment and collection proceeding. Ordinarily, after the IRS has determined that a taxpayer has an income tax deficiency, the Commissioner must mail a Notice of Deficiency to the taxpayer before the deficiency is assessed or any collection action taken against the taxpayer.[1] 26 U.S.C. § 6212(a).[2] The taxpayer has ninety days after the notice is mailed to file a petition in the United States Tax Court for a redetermination of the deficiency. Section 6213(a). Within this ninety-day period, the IRS is prohibited from assessing the proposed deficiency or taking any action to collect the tax. *Id.* Additionally, if the taxpayer chooses to file a petition with the United States Tax Court, the IRS is forbidden from assessing or collecting the

---

1. The normal notice procedures for assessing and collecting a deficiency are supplanted by summary procedures when it is established that a taxpayer intends to obstruct the collection of the tax unless immediate action is taken, or that the collection of the tax will be jeopardized by delay. *See* 26 U.S.C. §§ 6851, 6852, 6861. These procedures were not applicable in this case and are therefore not relevant.

2. All further section references are to 26 U.S.C. unless otherwise noted.

deficiency at issue until the tax court's decision becomes final. *Id.*

Miller was audited by the IRS in the early and mid 1980's for certain limited partnerships he had formed. In 1987, the audit was concluded and the IRS (via the auditing agent, Jon A. Tamaki) recommended that approximately $16 million in federal withholding tax deficiencies and penalties be assessed against Miller. Tamaki Decl. ¶¶ 1–7.

Agent Tamaki's audit report, completed in August 1987, was then lost for two years. Upon its rediscovery in June or July 1989, the audit file was hastily sent to the IRS' Philadelphia Service Center for processing.[3] Janich Decl. ¶ 2.

No ninety-day Notice of Deficiency was sent to Miller by either the San Francisco or San Jose IRS offices. Winnick Decl. ¶ 9. The Philadelphia Service Center assesses, but does not issue notices of deficiency. *Id.* at ¶ 7. Consequently, Miller was not sent any ninety-day Notice of Deficiency by the IRS prior to the first assessments being mailed. *Id.* at ¶ 9.

The first assessments were made on September 4, 1989, by the Philadelphia Service Center. *See* "Statements of Tax Due IRS" Forms, attached to First Amended Complaint as Exs. 7a–7e. On October 16, 1989, the Center mailed a second round of collection notices. *See* "Dear Taxpayer" Letters, attached to Complaint as Exs. 8a–8e.

Miller received both sets of documents near the end of October 1989 and promptly contacted his attorney, Edward Mevi. Miller Decl. ¶ 12. Mr. Mevi telephoned the Philadelphia Service Center one or more times in late October. *Id.* at ¶ 13. Although Mevi's conversations with the Philadelphia Service Center obviously concerned the assessment and collection notices that Miller had received, the substance of those conversations is unclear.

On April 26, 1990 Kenneth Whitmore, the IRS agent assigned to the collection of Miller's tax liabilities, accompanied by Agent Jules Tupaj, attempted to question Miller at his home. Whitmore Decl. ¶ 7. During this interview, Agent Tupaj allegedly informed Miller that he was there to "collect his unpaid tax liabilities," and Miller apparently responded that he preferred to deal with the IRS through his attorney. *See Id.;* Miller Decl. ¶¶ 17–21.

A notice of federal tax lien against Miller, manually prepared by Agent Tupaj at Agent Whitmore's request, was filed on May 1, 1990. On May 17, 1990, a duplicate and redundant notice of federal tax lien was filed "automatically" by the IRS computer. Whitmore Decl. ¶¶ 8, 13.

On June 5, 1990, Mr. Brookes, Miller's new counsel, wrote to the IRS requesting a

---

**3.** Tamaki states that after he finished the Miller audit report in August 1987 and returned the report to the San Francisco review office, he had no further involvement with the case until 1989. Tamaki Decl. ¶¶ 6–7. In 1989, Tamaki's new group manager, Donald Kihara, showed him a box Kihara had received from the San Francisco Examination District that contained the Miller audit report. *Id.* Kihara stated that he learned about the report from IRS employee Doug Kunze, who actually found the misplaced file. Kihara Decl. ¶ 2. Plaintiff's attorney claims that Kihara informed him that Tamaki had "left his audit report in a drawer of his desk" after Tamaki had been transferred to the San Jose District from the San Francisco District office. Brookes Decl. ¶ 21.

Once rediscovered, the report apparently was treated like a "hot potato." Kunze, in San Francisco, transferred the file to Kihara, in San Jose. Kihara Decl. ¶ 2. Kihara tried to give the file to the group headed by IRS Agent Steiner, which should have originally received it in 1987. *Id.*

at ¶¶ 2–4. The Steiner group had, unfortunately, "completely disbanded" by this time. *Id.* Unable to locate the disbanded Steiner group, Kihara instead gave the audit report to the group headed by IRS Agent Janich, whose chief qualification for handling the report seemingly was its "close physical proximity" to Kihara's group. Janich Decl. ¶ 1; Kihara Decl. ¶ 5. Jean Janich promptly passed the file to Ann Reuter, an agent in the group. Janich Decl. ¶ 2. After conferring with an unnamed "acting manager," in the San Jose office, Reuter and Janich processed substitute returns and then shipped the Miller file to the Philadelphia Service Center. *Id.* As of December 19, 1990, Janich states that she has "still not been able to retrieve the administrative file from the Philadelphia Service Center which [she] sent to it on July 26, 1989." *Id.* at ¶ 4. The Philadelphia Service Center processed the audit report without any ninety-day Notice of Deficiency having been issued. Winnick Decl. ¶ 7.

copy of the ninety-day Notice of Deficiency. *See* "Brookes Letter to IRS," attached to Complaint as Ex. 11. On July 10, 1990, the IRS Regional Counsel responded that it was attempting to locate a copy of the Notice of Deficiency. Winnick Decl. at Ex. C. On July 27, 1990, the Regional Counsel determined that no Notice of Deficiency had been sent by any IRS office and that a statutory Notice of Deficiency was required for the assessments to be legally valid. *Id.* at ¶ 9. The IRS released the notices of federal tax lien on July 27, 1990. *Id.* at ¶ 10.

On August 3, 1990, a request for abatement of the Miller tax assessments was transmitted to the Philadelphia Service Center. *Id.* at ¶ 11. The assessments were abated on August 29, 1990. *See* "Notice of Adjustment" Forms, attached to Complaint as Exs. 13a–13e.

Plaintiff filed the pending complaint in issue on October 31, 1990.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 2552–57, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The court's function, however, is not to make credibility determinations.

*Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

## DISCUSSION

### 1. *Section 7432*

Plaintiff's first cause of action seeks civil damages for failure to release a lien pursuant to section 7432(a), part of the so-called "Taxpayer's Bill of Rights" enacted in the Technical and Miscellaneous Revenue Act of 1988, § 6240(c), Pub.L. No. 100–647, 102 Stat. 3746. This section provides, in pertinent part, that "[i]f any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States" in a federal district court. Section 7432(a).

### a. *Code Mechanisms*

A brief review of the relevant tax code provisions is warranted. Sections 6321–6323 provide for the creation, validity and priority of liens for taxes. Section 6325(a) provides the procedure the Secretary of the Treasury ("Secretary") shall follow for the release of a lien upon a finding that liability for the amount assessed has become legally unenforceable.

Section 6326 addresses the administrative appeal of liens and provides that any person may, after the filing of a notice of lien, appeal by alleging an error in the filing of the notice of such lien. If the Secretary determines that the filing of the notice was erroneous, then the Secretary shall expeditiously (preferably within 14 days), issue a certificate of release of lien, including a statement that such filing was erroneous.[4] This section and section 7432 were added to the statute in 1988.

Section 7432 permits a civil suit against the United States if an IRS officer recklessly or negligently fails to release a lien under section 6325. Subparagraph (d)(1)

---

**4.** Treasury Regulation 26 CFR § 301.6326–1T covers the process for filing an administrative

appeal of the erroneous filing of a notice of federal tax lien.

contains an exhaustion requirement.[5] Subparagraph (e) provides that the Secretary shall prescribe reasonable procedures for a taxpayer to notify the Secretary of the failure to release a lien under section 6325.

There are two distinct problem areas covered by these lien sections. The first, concerning removal of an erroneously filed notice of federal tax lien, need not be addressed in detail except to note that the Government confuses it with the second.[6]

The second problem, and the one around which this case revolves, arises when the actual assessment and demand which create a lien, not merely the *notice* of lien, are legally invalid. In Miller's case, by failing to send a ninety-day Notice of Deficiency, the IRS violated section 6212(a) and section 6213(a). Since notice is a condition precedent to any assessment and resulting lien, the lack of such notice renders the assessment and lien legally unenforceable.

In these situations the taxpayer is reliant on section 6325(a), and the parallel threat of a section 7432 action, to persuade the Secretary to release the unlawful lien imposed by the assessment and demand. There are, however, no established procedures outlining exactly *how* the taxpayer is to give notice to the Secretary of the lien's legal unenforceability under either section 7432 or section 6325, so as to comply with

section 7432(d)(1) and 7432(e), of these provisions.[7]

### b. *Liens And Notice*

The Government's motion first focuses on the notice of federal tax lien, which was filed on May 1, 1990, and released on July 27, 1990. The Government apparently believes that a tax lien does not arise until a notice of tax lien is filed. The Government also claims that taxpayers must provide written notice to the IRS of the failure to release a *notice of tax lien before an action* for damages under section 7432 can be maintained.

The Government contends that plaintiff did not provide the IRS with written notice that a problem existed with the assessments until June 5, 1990. Furthermore, the Government states that once the Regional Counsel had somehow "determined" on July 27, 1990, that no ninety-day Notice of Deficiency had been sent to Miller, the notice of tax lien was immediately released. For these reasons, the Government argues that no IRS employee knowingly or negligently "failed to release" a lien under section 6325, and that plaintiff therefore has no cause of action under section 7432.

The Government's arguments are fatally flawed.

> The Government's arguments confuse the section 6326 mechanism, which deals with the removal of improper *notice* of tax lien, with the sections concerned with releasing an *actual* illegal lien, i.e. sections 6325 and 7432.

---

5. Section 7432(d)(1), "Requirement that administrative remedies be exhausted," provides that "[a] judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

6. Section 6326 provides the vehicle for removal of an erroneously filed *"notice* of lien" where the notice, if properly filed, would have perfected the government's claim against certain enumerated creditors. For example, a notice of lien should be removed when it does not meet the requirements of proper place of filing as outlined in section 6323(f)(1). Where a notice of lien is filed in an improper place, then section 6326 provides for the voiding of the lien and the IRS may then file a proper notice of lien. This removal of the erroneous notice of lien could have significant consequences for creditors in the enumerated groups of section 6323, as the date of perfection of the government's lien would hinge upon proper filing of the *notice* of lien.

7. Section 7432(e) provides that the Secretary shall by regulation prescribe reasonable procedures for a taxpayer to notify the Secretary of the failure to release a lien under section 6325. As of the date this lawsuit was filed, however, the Secretary had *not* issued procedures prescribing how a taxpayer is to notify the IRS of the failure to release a lien under section 6325.

Nor are the regulations promulgated for section 6325 of any help; the issued procedures for notice cover only liens based on estate or gift tax liability, *see* 26 CFR § 301.6325–1(c)(2), and discharge of specific enumerated properties from the lien, *see* 26 CFR § 301.6325–1(b)(4). No regulations establishing a mechanism for providing notice related to release of lien under the relevant section for this case, 26 CFR § 301.6325–1(a)(1), have been issued.

#### i. *Lien Arose Upon Assessment And Demand*

It should first be pointed out that there is virtually no reported case law regarding section 7432, and none involving the issues raised here.

■ The Government's argument that no lien against Miller arose until the notice of lien was filed on May 1, 1990, must be rejected. The lien was not *perfected* against section 6323 enumerated creditors until the notice of lien was filed. However, the Internal Revenue Code itself provides that the actual lien arises on the date on which the assessment is coupled with a de minimis demand for payment, in this case sometime in September or October 1989. *See* section 6321 (if any person liable for tax neglects to pay the same after demand, the amount shall be a lien in favor of the United States); section 6322 (the lien imposed by section 6321 shall arise at the time the assessment is made).[8]

The Government apparently believes that the assessments mailed to Miller on September 4, 1989 were merely neutral statements of the amount of liability, with no demand for payment. The documents themselves, however, demonstrate beyond question that demands for payment were combined with the initial assessment. *See* "Statement of Tax Due IRS" Forms, attached to Complaint as Exs. 7a–7e.[9] Even assuming the September 4, 1989 assessments are viewed as mere invitations to pay, the October 16, 1989 letters are unquestionably collection demands. *See* "Dear Taxpayer" Letters, attached to Complaint as Exs. 8a–8e (letters advising that plaintiff "pay the total amount due immediately," referring to the IRS' "Enforced Collection Policy," and signed by "Patricia A. Betlejewski, Chief, Collection Branch"). These fact indicate that a federal tax lien arose against Miller no later than October 16, 1989.

#### ii. *Notice And Exhaustion Under Section 7432*

■ The lien was legally unenforceable by reason of non-issuance of a ninety-day Notice of Deficiency. The court must determine when and by what means the IRS may be deemed to have "found" that Miller's assessment was legally unenforceable.

Section 6325 in relevant part provides that the Secretary "shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after" finding that liability for the amount assessed "has become legally unenforceable."

Enacted prior to section 7432, section 6325 by itself does not provide a procedure for relief by an aggrieved taxpayer; nor do

---

**8.** Numerous cases stand directly for the proposition that a federal tax lien arises when the IRS makes an assessment coupled with a demand for payment. *See, e.g., Brown v. State of Md.,* 699 F.Supp. 1149, 1151 (D.Md.1987), *affd.,* 862 F.2d 869 (4th Cir.1988) (federal income tax lien arose on date assessments were made); *Sgro v. United States,* 609 F.2d 1259, 1261 (7th Cir.1979) (that the government might not file notice of tax lien until some future date, if at all, does not affect the immediate attachment of a tax lien when liability is assessed: seemingly unencumbered property may therefore in fact be subject to a "secret" tax lien); *City of Dallas, Texas v. United States,* 369 F.2d 645, 646 (5th Cir.1966) (federal tax lien arose when District Director assessed and made demand on taxpayer for payment); *United States v. Salerno,* 222 F.Supp. 664, 667 (D.Nev.1963), *mod.* and *affd.* in *Mutual Life Ins. Co. of New York v. United States,* 343 F.2d 71, 74 (9th Cir.1965) (choate lien attaches at time of assessment of tax deficiency).

There are many subtle areas of the Tax Code; this is not one of them. Even a casual glance at case law, and more importantly sections 6321 and 6322 themselves, "reveals" that a tax lien arises on the date of assessment coupled with a demand for payment. Counsel for the Government inexplicably fails to address this point, instead clinging to the unsupported and incorrect notion that a lien only arises when a notice of lien is filed.

**9.** These assessment letters, far from being mere neutral conveyors of the tax deficiency due, contain numerous phrases suggestive of demand for payment. For example, "[p]lease return this copy with your payment," (in bold type) immediately catches the eye, along with "Please pay the amount shown below within ten days from 09–04–89" and "[M]ake your check or money order payable to Internal Revenue.... Send your payment and this notice to: [address]." These phrases are on all five documents mailed to Miller on September 4, 1989. *See* Complaint, Exs. 7a–7e. These assessments clearly contain demands for payment.

the minimal regulations promulgated under section 7432 provide any assistance. By adopting section 7432 Congress intended to provide the taxpayer with a remedy for the Secretary's noncompliance with section 6325. In subparagraph (e) of section 7432, Congress directed the Secretary to prescribe reasonable procedures "for a taxpayer to notify the Secretary of the failure to release a lien under section 6325 on property of the taxpayer." As mentioned above, the Secretary has failed to promulgate such regulations.[10] *See* note 7, *supra.*

The Government argues that Congress intended that the written notice provisions of section 6326 serve as the mechanism by which a taxpayer should notify the IRS of a failure to release a lien under section 6325 pursuant to section 7432(e). At oral argument, counsel for the Government further urged that section 6326's procedures, for which regulations have been promulgated, are the administrative remedy to be used to comply with section 7432(d)(1).[11] The Government alludes to the fact that both sections were part of the same enactment in 1988.

A close scrutiny of section 6326 and its attendant Treasury regulations, i.e., 26 CFR § 301.6326–1T (1990), shows the fallacy of this contention. First, on its face section 7432 makes no reference to section 6326, but instead refers only to section 6325. If Congress had intended section 6326, which it enacted at the same time, to be the administrative procedure referred to in section 7432(d)(1) or the notice procedure referred to in section 7432(e) it would have said so; it did not.

Second, the legislative history of sections 7432 and 6326 shows that Congress intended that these two sections be used for different purposes. Section 6326 was added to provide an appeal mechanism for IRS decisions concerning the collection of a tax liability, and specifically focuses only on the removal of an erroneously filed *"notice* of lien." *See* House Conf.Rep. No. 100–1104, Tech. and Misc. Revenue Act of 1988, 100th Cong., 2d Sess. 224, *reprinted in* 1988 *U.S.Code Cong. & Admin.News* at 5284 (1989) (emphasis added). Section 7432, in contrast, was added specifically to grant taxpayers a right to bring an action for damages resulting from "the wrongful failure to remove *a lien* on a taxpayer's property." *See* 1988 *U.S.Code Cong. & Admin.News* at 5287 (emphasis added). The court presumes that Congress knows the difference between the terms "notice of lien" and "a lien," and between an administrative appeal and a damages remedy, and that Congress crafted these sections with those distinctions in mind.[12]

**10.** Many of the difficulties in this case stem from the fact that section 6325 did not give taxpayers a clear cause of action, but section 7432 does provide taxpayers with a distinct claim. The problem is that the old Treasury regulations for section 6325 make no sense and are incomplete in light of the new remedy for violations of section 6325 provided by section 7432.

**11.** The Government's argument regarding non-exhaustion of administrative remedies by plaintiff conveniently ignores the fact that the IRS has waived such a defense in this case. See October 17, 1990, Letter from Catherine L. Lau, Assistant District Counsel, IRS, to Lawrence Brookes, attached to Complaint as Ex. 16 ("we further agreed that, at least for the purposes of this instant case, the filing of the claim will constitute the administrative remedy for purposes of I.R.C. §§ 7430, 7432 and 7433"). The court nevertheless addresses this issue.

**12.** The court also presumes that Congress did not intend its laws to be inequitable. The Government argues that "[t]he Congress made it

clear that taxpayers must provide written notice to the IRS of the failure to release a notice of tax lien before an action for damages under § 7432 can be maintained." Defendant's Reply Brief at 10. The Government's logic implies that if a taxpayer should realize that a lien has been improperly *imposed,* by an illegal assessment and demand upon the taxpayer's property, then the taxpayer's sole recourse is to wait until the IRS files a *notice* of federal tax lien. According to the Government, only then may the taxpayer use section 6326's procedures to appeal the erroneous *notice* of lien. The Government assumes that in the course of certifying that the notice of lien was erroneously filed, the IRS will also realize that the lien itself is legally unenforceable and, of its own volition, will issue a section 6325 certificate of release of lien.

This argument implies a system infused with unfairness. For example, if the IRS never filed a notice of lien, how would the taxpayer clear the title of his or her property, short of a lawsuit? What recourse would the taxpayer have if the IRS was merely slow in filing a notice of lien? (Note that in this case the notice of lien

At oral argument the Government referred to legislative history for section 7432 that the Government claimed demonstrated that Congress intended section 6326's "written notice" procedures to be incorporated into section 7432. The legislative history for section 7432, however, makes absolutely no reference to section 6326. In its Reply brief, counsel for the Government, after stating that "[p]laintiff's counsel has obviously not read the statute, any of the cases [footnote] which discuss § 7432, or its legislative history attached to the government's memorandum" quotes a paragraph of the legislative history for section 6326 as if it were actually the legislative history for section 7432. *See* Defendant's Reply Brief at 9–10. This is incorrect: the quoted paragraph is found nowhere in the legislative history of section 7432. *See 1988 U.S.Code Cong. & Admin. News* at 5284.

A mention of "written notice" in section 7432's legislative history occurs only in the Senate Amendment to section 7432; it is notably absent from the final Conference agreement.[13]

Third, section 7432 on its face contemplates an action for *negligent* failure to release a lien, thus indicating that the standard for finding a lien unenforceable under section 6325 must be looser than the constricted formal written notice requirement advanced by defendant.[14]

Fourth, the Treasury regulation promulgated by the Secretary for section 6326, 26 CFR § 301.6326–1T (1990), which the Government argues is the exhaustion procedure for section 7432(d)(1), textually makes no sense in that context. Subsection (a) of the regulation provides that "[s]uch appeal [i.e., a section 6326 appeal] may be used only for the purpose of correcting the erroneous filing of a notice of lien." 26 CFR § 301.6326–1T(a) (1990). Subsection (f) states that the section 6326 appeal "shall be the exclusive administrative remedy with respect to the erroneous filing of a notice of federal tax lien." *Id.* at section 301.6326–1T(f). The regulation does not mention section 7432, and indeed clearly states that it "may be used only" for section 6326 appeals. *Id.* at section 301.6326–1T(a).

Simply put, if Congress had intended section 6326's written notice requirement to apply to section 7432, Congress would have so stated. Congress did not write the statute in this manner; nor did the Secretary adopt the regulations pertaining to section 6326 for the purposes of subsection 7432(d)(1) or section 7432(e). In fact, the Secretary has failed to adopt regulations for a procedure to comply with section 7432(d)(1) or section 7432(e).

Therefore, the Government's argument that the IRS received notice of the unenforceability of the assessments and resulting lien on June 5, 1990, when Miller's attorney wrote the IRS a letter requesting a copy of the non-existent ninety-day Notice of Deficiency, must be rejected. In the absence of any Treasury regulations on the matter, the court holds that whether the IRS "found" or became aware of the unenforceability of the lien under section 6325 prior to June 5, 1990, is a question of fact

---

was not filed until over six months from the original illegal assessment and demand) Would a taxpayer then be denied access to section 7432 relief? These all-too-possible scenarios cannot have been intended by Congress.

The Government cites two cases, *Greenhouse v. United States,* 738 F.Supp. 709, 710 n. 1 (S.D. N.Y.1990), and *Overton v. United States,* 925 F.2d 1282 (10th Cir.1991), for the contention that section 7432 may only be used after notices of federal tax lien have been filed. Neither case supports this proposition.

**13.** The Senate Amendment in no way attempted to incorporate section 6326 into section 7432. *See* 1988 *U.S.Code Cong. & Admin.News* at 5287.

**14.** Case law on what constitutes a "finding" under section 6325 is scanty, probably because only under section 7432 does a clear cause of action for a violation exist. *See* note 10, *supra.* The court notes, however, *In re Bowen,* 151 F.2d 690, 692 (3rd Cir.1945) (finding that the regulation governing the discharge of property from federal tax liens "undoubtedly puts a duty on the Collector for ascertainment of facts and the use of his own judgment" and holding that the party desiring a certificate of discharge has *no* "affirmative obligation to acquire all available information and put it at the disposal" of the Collector). *Bowen* lends support against a written notice requirement for section 6325.

that cannot be resolved on summary judgment.

### iii. *Material Questions Exist*

█ Examining this case, the following facts appear:

1) That after the initial assessments/demands of September 4, 1989, a second round of collection letters were mailed on October 16, 1989;

2) Miller's attorney, Mr. Mevi, contacted the Philadelphia Service Center in late October 1989, possibly more than once, regarding these assessment and collection notices;

3) Agents Kenneth Whitmore and Jules Tupaj interviewed Mr. Miller in person at his home on April 26, 1990;

4) On May 1, 1990, at Agent Whitmore's request, Agent Tupaj manually prepared and filed a notice of federal tax lien against Miller;

5) A redundant notice of lien was "automatically" filed on May 17, 1990; and

6) On June 5, 1990, Miller's new attorney, Mr. Brookes, wrote to the IRS demanding a copy of the non-existent Notice of Deficiency.

A reasonable trier of fact could find that anyone of these six incidents provided the IRS with an opportunity to determine that the lien was legally unenforceable. If the IRS was aware or should have been aware, based upon any of these enumerated incidents, that the Miller lien was legally unenforceable, and then knowingly or negligently failed to release the lien within thirty days, plaintiff has a valid cause of action under section 7432.[15] Indeed, to deny a section 7432 action, the Government is reduced to contending that only on July 27, 1990, did the IRS become truly aware that the lien was legally unenforceable, nearly ten months after the initial assessment and demand.[16]

Viewing the facts in the light most favorable to plaintiff, the court finds that there is a genuine material issue of fact as to when the IRS found or would have found, but for negligence, that the lien imposed in late October of 1989 on plaintiff Miller was legally unenforceable. The court also finds

---

**15.** The court notes that even the June 5, 1990 letter (which the Government implicitly concedes meets section 6326's written notice requirements) satisfies the thirty-day test for a cause of action under section 7432 (via section 6325), since the notice of lien was not removed until July 27, 1990, if even then. *See* note 16, *infra*.

**16.** Since the court concludes that there are sufficient other material issues of fact on which to deny defendant's motion, the court does not reach the question of whether the July 27 *release of notice of lien, see* Winnick Decl. ¶ 10, was a sufficient *"certificate of discharge"* of lien under section 6325. It may well not have been, since it appears that a mere certificate of *release of notice* of lien issued under section 6326 is less expansive and not identical in scope to a certificate of *release of lien* issued under section 6325. *Compare* section 6326(b) (certificate of release of notice of lien focuses on "a statement that such filing [of notice of lien] was erroneous") *with* section 6325(a) ("the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax") *and* section 6325(f)(1) (a section 6325 certificate is conclusive evidence that the referenced lien is extinguished, discharged, subordinated, or does not attach).

It may be validly argued that only when the assessments were abated on August 29, 1990, was the lien cancelled, and perhaps not even then, if no certificate was issued; i.e., the lien may be legally valid *until* an actual section 6325 certificate is issued. It is curious to note that *each* of the five assessment abatements certified on August 30, 1990 contains the handwritten notation, "Do Not Notify T/P [taxpayer]." *See* "Notice of Adjustment" Forms, attached to Complaint as Exs. 13a–13e. If the IRS were to contend that these notices of adjustment were equivalent to certificates of release of lien under section 6325, one might well wonder why taxpayer Miller was specifically not to be notified of such adjustments, and whether this qualifies as negligent or knowing failure to release a lien. *See also Kurio v. United States,* 281 F.Supp. 252, 264 (D.Tex.1968) (where government failed to cancel tax assessment and issue certificate of release of federal tax lien within reasonable time after judgment for taxpayer, taxpayer could institute legal proceedings to force such action). In *Kurio* the court stated that a written application had to be filed by the taxpayer as a prerequisite to a release of tax lien under section 6325. *Id.* at 263 n. 12. This appears to be an incorrect interpretation, especially since the court based this statement on Treas.Reg. section 301.6325–1(b)(4), which applies *only* to discharge of specific property from a lien, not to release of a lien itself due to unenforceability, which is contained in section 301.6325–1(a) and has no notice procedures.

that there is a material issue of fact as to whether the IRS knowingly or negligently failed to release the lien once its legal unenforceability was discovered. Therefore, the court denies defendant's motion for summary judgment against plaintiff on the first cause of action.

### 2. *Section 7433*

Plaintiff's third cause of action is for civil damages for certain unauthorized collection actions, pursuant to section 7433. Section 7433 provides in relevant part that "[i]f in connection with any collection of Federal tax ... any officer or employee [of the IRS] recklessly or intentionally disregards any provision of this title," the taxpayer may bring a civil action for damages against the United States in a federal district court. Section 7433(a).[17]

■ The Government first argues that the making of an assessment is not a collection activity, asserting that an assessment is a mere determination of tax liability which must precede any collection action by the IRS. The Government is correct that a mere assessment is not a collection action. However, as the Government acknowledges, a notice and demand for payment constitute a collection action, as does the filing of a notice of tax lien.

■ As discussed in section 1, *supra,* the September 4, 1989 "assessments" incorporated demands for payment within the same document. *See* "Statement of Tax Due IRS" Forms, Complaint Exs. 7a–7e. Furthermore, the October 16, 1989 letters were certainly collection notices and were signed by the chief of the Philadelphia Service Center's collection branch. *See* "Dear Taxpayer" Letters, Complaint Exs. 8a–8e. Also, a notice of tax lien was manually filed on May 1, 1990, with the direct knowledge of at least two IRS Agents; and a notice of tax lien was filed "automatically" on May 17, 1990. Whitmore Decl. ¶¶ 8, 13. All these actions qualify as collection activities under section 7433.

■ The Government next contends that there is no evidence that any IRS employee acted "recklessly or intentionally disregarded" any provisions of Title 26 in pursuing collection of the Miller deficiency. However, as discussed in section 1(iii), *supra,* there are material questions of fact concerning the IRS' actions in the collection of the Miller lien.

Plaintiff's attorney, Mr. Mevi, contacted the Philadelphia Service Center in late October 1989 regarding the assessments and demands issued by that office. Furthermore, on April 26, 1990, Agents Kenneth Whitmore and Jules Tupaj interviewed Mr. Miller, in person, at his home regarding the collection of his taxes. Subsequent to this face-to-face encounter between two IRS agents and plaintiff, Agent Tupaj manually prepared and filed a notice of federal tax lien against Miller at Agent Whitmore's request. Finally, on June 5, 1990, plaintiff's attorney Mr. Brookes wrote to the IRS requesting a copy of the non-existent ninety-day Notice of Deficiency.

All these actions were taken while the IRS was in the process of vigorously attempting to collect a tax deficiency from plaintiff. However, a certificate of removal of notice of tax lien was not filed, however, until July 27, 1990, and the assessments themselves were not abated until August 29, 1990. *See* note 16, *supra.*

Given this history, the court finds that there is a genuine material issue of fact as to whether any IRS agent involved in the collection of plaintiff's tax deficiency "recklessly or intentionally" disregarded any provisions of the tax code. Therefore, the court denies the Government's motion for summary judgment on plaintiff's third cause of action.

### CONCLUSION

This court has considered the papers submitted and the parties' arguments. After review of the current motion, and for the reasons discussed above, the court hereby DENIES the Government's motion for summary judgment on plaintiff's first and

---

**17.** Section 7433 has an exhaustion of administrative remedies requirement identical to that in section 7432.

third causes of action, under 26 U.S.C. §§ 7432 and 7433 respectively.

IT IS SO ORDERED.