**Gilbert T. GONSALVES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 91–0112 P–C.**

United States District Court, D. Maine.

Jan. 21, 1992.

---

Gilbert T. Gonsalves, pro se.

David R. Collins, Asst. U.S. Atty., Portland, Me., David S. Newman, Washington, D.C., for defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

This case arises out of an internal revenue dispute between *pro se* Plaintiff Gilbert T. Gonsalves and Defendant Internal Revenue Service (hereinafter "IRS"). Plaintiff has initiated suit against the IRS.[1] On March 28, 1991, Plaintiff filed this action for monetary damages under sections 7422 and 7433 of the Code, alleging that Defendant violated 26 U.S.C. § 6331(d), as well as the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiff's Complaint (hereinafter "Complaint"), ¶¶ 1–2. Plaintiff asserts four actions constituting the alleged violations of his rights by the IRS: (i) denial of his "appeal rights" under the internal revenue laws (Complaint, ¶ 1); (ii) refusal to refund taxes alleged to have been erroneously and illegally assessed and collected relative to the years 1981 through 1985 (Complaint, ¶ 2); (iii) failure to give notice and demand relative to assessments against him prior to issuing liens and levies (Complaint, ¶ 3); and (iv) use of evasive and delaying tactics in preventing him from concluding his tax differences (Complaint, ¶ 4).[2]

The Court now has before it Defendant's Motion for Summary Judgment filed on October 10, 1991. The Court acts on the motion on the basis of the written submissions of the parties. For the reasons that follow, the Court will grant in part and deny in part the Motion for Summary Judgment.

I. SUMMARY JUDGMENT

A motion for summary judgment must be granted if:

---

**1.** The proper Defendant in this suit is the United States. Plaintiff improperly named the IRS as Defendant and asserts federal court jurisdiction under certain statutes in which any civil action is to be brought against the United States. Specifically, Plaintiff charges that Defendant has violated 28 U.S.C. § 1346(a)(1), which states that the district courts shall have original jurisdiction of:

> Any civil action *against the United States* for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected ...

28 U.S.C. § 1346(a)(1) (emphasis added). Plaintiff has filed for monetary damages under 26 U.S.C. §§ 7422 and 7433. Section 7422(f)(1) states that "[a] suit or proceeding ... may be maintained only against the United States and not against any officer or employee of the United States...." Similarly, Section 7433(a) states that "[a] taxpayer may bring a civil action for damages against the United States in a district court of the United States." *See also Person v. United States of America and Commissioner of Internal Revenue,* 90–2 U.S. Tax Cas. (CCH) ¶ 50,365, 85,126, 85,128, 1990 WL 107423 (D.C.Haw.1990).

The Court has restyled the case to reflect the proper party-defendant. The parties shall utilize the new case style in all subsequent filings herein.

**2.** Plaintiff does not seek the refund of taxes paid for the years at issue. *See* United States' Statement of Uncontested Facts in Support of its Motion for Summary Judgment (hereinafter "United States' Statement"), ¶ 5.

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the pro-offered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.

*Anderson*, 477 U.S. at 249–59 [106 S.Ct. at 2510–16].

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989).

The Court now looks to the supporting papers on the motions and the citations to materials of evidentiary quality in support of the issues that the Court must consider as a basis for its action upon the motion.

## II. FACTS

Plaintiff was an employee of the Panama Canal Commission (hereinafter "Commission") from 1979 to 1985. The IRS assessed against, and collected from, Plaintiff income taxes on his income earned as an employee of the Commission. Plaintiff asserts that his commission wages were not taxable and he filed claims for refunds for the years 1981–85.

After Plaintiff filed his 1981 federal income tax return,[3] an assessment was made against him for income taxes relative to that year. The IRS levied on bank accounts of Plaintiff and, on March 3, 1988, seized $5,105.37 of Plaintiff's funds held in an account at First New Hampshire Bank to apply to Plaintiff's unpaid 1981 income tax liability.

After numerous correspondence between Plaintiff and the IRS, the IRS informed Plaintiff on January 22, 1990 that it could not allow his claims for refund for the time period in question (1981–85). The IRS indicated that its letters were Plaintiff's "legal notice[s] that [his] claim[s] [were] fully disallowed." *See* Plaintiff's Objection, Plaintiff Exhibits B & C.

## III. DISCUSSION

### A. *Immunity*

The doctrine of sovereign immunity bars constitutional claims against the United States for money damages except

---

**3.** The parties dispute when Plaintiff filed his 1981 return. Plaintiff states that he filed it on January 10, 1985, *see* Plaintiff's Objection to U.S. Statement of Uncontested Facts (herein-

after "Plaintiff's Objection"), ¶ 7, and Defendant states that it was filed on October 28, 1986. *See* United States' Statement, ¶ 7, at 2.

where it consents to be sued by statute. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Burgos v. Milton,* 709 F.2d 1, 2 (1st Cir.1983). "Limitations and conditions upon which the [United States] consents to be sued must be strictly observed and exceptions thereto are not to be implied." *See Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). In the absence of explicit statutory consent, the United States is immune from suit; the federal district court lacks jurisdiction in such circumstances; and the claim must be dismissed. *See Testan,* 424 U.S. at 399, 96 S.Ct. at 953; *Gilbert v. Da Grossa,* 756 F.2d 1455, 1458–59 (9th Cir. 1985).

■ Here, the United States has not waived its immunity from suit for damages arising from constitutional violations. It has not consented to be sued by statute and, therefore, a claim for damages for such violations may not be brought against the United States but can only be maintained against those federal officials who were directly responsible. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 410, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring). Here, no agents or officials of the United States are proper parties to this suit and, as noted by the First Circuit:

> No agents of the federal government are parties to this suit and even if they were, their presence would not effect our jurisdiction over defendant agencies of the United States. It seems clear that the sovereign immunity of the United States is not waived simply because agents of the government may be *personally* liable

for deprivation of constitutional interests.

*American Association of Commodity Traders v. Department of Treasury,* 598 F.2d 1233, 1235 (1st Cir.1979) (footnote omitted). Defendant is subject to the constitutional claims of Plaintiff only to the extent that they may be brought under 26 U.S.C. § 7433;[4] they cannot be brought under the United States Constitution. The United States, therefore, has not waived sovereign immunity for constitutional violations.[5] As a result, the sovereign immunity doctrine bars Plaintiff's claims against the United States for alleged constitutional violations under the Due Process Clause of the Fifth Amendment, *see* Complaint ¶¶ 1–4, and the Equal Protection Clause of the Fourteenth Amendment. *See* Complaint, ¶ 2.

■ The Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. ¶¶ 2671 *et seq.,* constitutes a limited waiver of sovereign immunity for certain negligent or wrongful acts by government employees acting within the scope of their employment. *See Hydrogen Technology Corp. v. United States,* 831 F.2d 1155, 1160 (1st Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988). With respect to any possible common law tort claims of Plaintiff against the United States, however, section 2680(c) of the FTCA prohibits any suit against the United States "arising in respect of the assessment or collection of any tax...." Courts have broadly construed the FTCA's exclusion regarding tax assessment or collection, dismissing claims for lack of subject matter jurisdiction on that basis. *See, e.g., National Commodity and Barter Association, National Commodity Exchange v. Gibbs,* 886 F.2d 1240, 1246 (10th Cir.1989) (assessment of penalties for promotion of abusive tax shelter); *Capozzoli v. Tracey,* 663 F.2d 654, 657–58 (5th Cir.1981) ("Congress intended to insu-

---

4. Section 7433 provides in pertinent part:
   If, in connection with any collection of Federal tax with respect to a taxpayer, *any officer or employee of the [IRS]* recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages

against the United States in a district court of the United States.
26 U.S.C. § 7433(a) (emphasis added).

5. Similarly, the United States has not waived its immunity from suit for damages for constitutional violations under 28 U.S.C. § 1346(a)(1).

late the IRS from tort liability stemming from *any* of its revenue-raising activities," including the taking of photographs alleged to be tortious invasion of privacy);[6] *American Association of Commodity Traders,* 598 F.2d at 1235 (refusal to process taxpayer's application for tax-exempt status under the Code); *Morris v. United States,* 521 F.2d 872, 874 (9th Cir.1975) (unlawful seizure and levy of property fell within exempted group of tort claims arising out of tax collection efforts). This broad construction of tax "assessment or collection" under section 2680(c) seems to "reflect the government's strong interest in protecting the administration of its tax systems from the burden of constant litigation." *Capozzoli,* 663 F.2d at 657.

■ Here, Defendant's conduct regarding levy and seizure of $5,105.37 of Plaintiff's funds held in his bank account to apply to his unpaid 1981 income tax liability falls squarely within the parameters of section 2680(c) of the FTCA. The IRS seized these funds as part of its collection efforts to secure Plaintiff's unpaid 1981 income taxes and, hence, any tort-related claim arising from Defendant's conduct is immune from suit.

Moreover, any of Plaintiff's other possible *tort* claims arising from Defendant's alleged denial of Plaintiff's appeal rights, *see* Complaint, ¶ 1; refusal to refund taxes paid by Plaintiff from 1981 through 1985, *see* Complaint, ¶ 2; and lastly, its alleged delaying and evasive tactics, *see* Complaint, ¶ 4; are dismissed because of Defendant's immunity from suit under section 2680(c) of the FTCA.[7]

**B.** *Limitations Period*

■ The applicable statutory provision in this case, section 7433 of the Code, was enacted on November 10, 1988 and applies only to actions by IRS officers or employees arising after December 31, 1988.[8] *See* Technical and Miscellaneous Revenue Act of 1988 ("TAMRA"), 26 U.S.C. § 7433. Civil actions under section 7433(a) "may be brought only within 2 years after the date the right of action accrues." *Id.,* § 7433(d)(3).

Here, the Court must determine when the right of action accrued. According to Defendant, no right of action could accrue until the enactment of section 7433 on November 10, 1988 and, hence, any alleged actions by Defendant prior to that time must be dismissed because no cause of action could be stated. *See* United States' Memorandum at 7. Yet Defendant also argues that Plaintiff's claims under section 7433 are time-barred because the alleged causes of action (in 1987 and 1988) "accrued more than two years prior to the filing of this action." *Id.*

Plaintiff alleges that his right of action arose on January 22, 1990, the date of two IRS legal notices that informed him that his claims for refunds were fully disallowed. *See* Plaintiff's Objection, Plaintiff's Exhibits B & C. The notices state in pertinent part:

> If you want to bring suit or proceedings to recover any tax, penalties, or other amounts for which this disallowance notice is issued, you may do so by filing such a suit with the United States Dis-

---

**6.** The *Capozzoli* court noted that:

> Congress retained the United States' sovereign immunity for any claim *in respect of* the assessment or collection of taxes. This language is broad enough to encompass any activities of an IRS agent even remotely related to his or her official duties.

663 F.2d at 658 (emphasis in original).

**7.** Defendant also raises another exemption, section 2680(a), of the FTCA as a defense. *See* United States' Memorandum in Support of its Motion for Summary Judgment (hereinafter "United States' Memorandum") at 5. Section 2680(a) bars any claim against the United States based on "the failure to exercise or perform a

discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused."

The Court need not address the applicability of this exemption because section 2680(c) clearly applies to the facts of this case and resolves the issue.

**8.** Under "Historical and Statutory Notes" provided in 26 U.S.C.A. § 7433, it states:

> **Effective Dates**
> 1988 Act. Section applicable to notices provided by the taxpayer of the failure to release a lien, and damages arising, after Dec. 31, 1988....

trict Court having jurisdiction.... The law permits you to do this within 2 years from the mailing date of this letter....

*Id.* In effect, the IRS states in these notices that Plaintiff's cause of action arose upon receiving legal notification that his claims were fully disallowed.

The statute provides that its effective date is after December 31, 1988. The Court concludes from this language that section 7433 is not retroactive. Accordingly, a cause of action could not accrue at the time of Defendant's levy and seizure of Plaintiff's bank account funds on March 3, 1988. Defendant's conduct in this regard, however, is part of a broader allegation by Plaintiff that this levy was part of Defendant's erroneous and illegal assessment and collection of taxes that it later refused to refund, as indicated in its January 20, 1988 legal notices to Plaintiff. In light of the ongoing post-levy correspondence between Plaintiff and Defendant regarding the issue of tax refunds, including the aforementioned legal notices covering tax years 1981–85 and issued by the IRS on January 22, 1990, the Court concludes that the seizure of Plaintiff's funds does not preclude a finding that a cause of action accrued after the statute's effective date.

■ The Court agrees with Plaintiff that Defendant's "legal notices that [Plaintiff's] claims are fully disallowed," dated January 20, 1990, begins the running of section 7433's statute of limitations. As a result, the Court finds that Plaintiff has filed his Complaint within the applicable statute of limitations under section 7433 and that his claim is not time-barred.[9]

The Court will now address the merits of Plaintiff's Complaint under section 7433.[10]

## C. *Count I: Right to Appeal*

■ Plaintiff alleges that Defendant violated his appeal rights and seeks damages under section 7433. Complaint, ¶ 1. Defendant argues that Plaintiff's alleged appeal rights arise only in the Internal Revenue Manual, which is outside the scope of section 7433. United States' Memorandum at 7. The scope of section 7433 encompasses "any provision of this title [26 U.S.C.], or any regulation promulgated under this title." 26 U.S.C. § 7433(a). The alleged appeal right is apparently described in several IRS publications, including Publication 1, *Your Rights as a Taxpayer*, Publication 556, *Examination of Returns, Appeal Rights, and Claims for Refunds*, and Publication 5, *Appeal Rights and Preparation of Protests for Unagreed Cases*. Trial

9. Defendant also raises the issue of damages as another basis for dismissing Plaintiff's Complaint. Under section 7433:

> (b) **Damages.**—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $100,000 or the sum of—
> (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional actions of the officer or employee, and
> (2) the costs of the action.

26 U.S.C. § 7433. Defendant argues that Plaintiff fails to allege any actual direct economic damages sustained as a proximate result of alleged *reckless or intentional actions* of IRS employees, as required under the aforementioned statute. *See* United States' Memorandum at 6 n. 2. Plaintiff alleges that his "inability to pursue his profession has deprived [him] of all income ..." Plaintiff's Trial Brief (unmarked) (hereinafter "Trial Brief") at 13. Plaintiff also states:

> The Plaintiff is a marine engineer and the profession requires going to sea for extended periods of time. an [sic] engineer should be

able to earn more than 100,000 dollars per year and working off-shore on board foreign flag vessels provides for even greater earnings.... Requests for audits and appeals fell on deaf ears and the Plaintiff dared not leave the country to pursue his profession. The Plaintiff's marine engineers license has expired as a result of the lack of current sea time and is currently unable to resume until reinstated.

Plaintiff's Objection to United States Motion for Summary Judgment at 8.

The Court rejects Defendant's argument that Plaintiff has failed to allege any actual direct economic damages under section 7433. In the absence of any case law to the contrary, the Court finds that the language of 26 U.S.C. § 7433(b)(1) is sufficiently broad to encompass Plaintiff's general allegation of economic damages arising from his loss of employment.

10. The parties do not dispute that Plaintiff has met the jurisdictional requirement under 26 U.S.C. section 7422(a) that an administrative claim precede a refund suit. *Cf. Deacon v. United States,* 90–1 U.S. Tax Cas. (CCH) ¶ 50,-221, 1990 WL 63067 (C.D.Cal.1990).

Brief at 1–2.[11] The IRS internal operating procedures are not provisions or regulations promulgated under the Code, and hence, claims in respect to them are not subject to the jurisdiction of the Court.[12] Therefore, the Court finds that, as a matter of law, any alleged violation of these procedures, including the denial of an appeal conference, is not actionable under section 7433 of the Code. The Court will dismiss Count I.

### D. *Count II: Refund of Taxes*

■ Plaintiff alleges that, as an employee of the Panama Canal Commission, he was not liable for the income taxes assessed for the years 1981 through 1985 and was entitled to refunds for income taxes paid. Complaint, ¶ 2. Defendant argues that the United States Supreme Court established the taxability of such wages in *O'Connor v. United States*, 479 U.S. 27, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986). It concludes that its "refusal to refund plaintiff's tax payments was not a violation of his rights, but rather, a correct and proper determination of his rights." United States' Memorandum at 10–11.

The Supreme Court held in *O'Connor* that the taxpayers, employees of the Panama Canal Commission, were not entitled to refunds of federal income taxes paid between 1979 and 1981. *O'Connor*, 479 U.S. at 30, 107 S.Ct. at 349. Courts have followed this holding in subsequent cases in which Commission employees have sought refund of their federal income taxes. *See, e.g., Skrable v. United States*, 811 F.2d 1202, 1203–04 (8th Cir.1987) (affirmed summary judgment in favor of United States that, under *O'Connor*, Commission employees not entitled to refund of income taxes).

In light of *O'Connor*, the Court finds that no genuine issue of material fact exists as to Count II and it will be dismissed as a matter of law.

### E. *Count III: Notice and Demand for Levy*

■ Plaintiff alleges that Defendant seized funds held by him in violation of 26 U.S.C. § 6331(d) and seeks damages under 26 U.S.C. § 7433. Complaint, ¶ 3. Under 26 U.S.C. § 6331(d)(1), the government can make a levy upon a person's property subject to a tax lien "only after the Secretary has notified such person in writing of his intention to make such a levy," and such notice must be served on the person upon whose property levy is intended "no less than 10 days before the day of the levy." *See id.*, § 6331(d)(2).[13] Courts have held that "strict compliance with this procedure is 'necessary to effect a valid levy and seizure.'" *United States v. Potemken*, 841 F.2d 97, 101 (4th Cir.1988) (quoting *Matter of Computer Management, Inc.*, 40 B.R. 201, 203 (N.D.Ga.1984)). *See also Miller v. United States*, 763 F.Supp. 1534, 1543 (N.D.Cal.1991). This notice and de-

---

**11.** Plaintiff has identified these publications as Exhibits No. 70, 71, and 72, respectively, but he has not provided the Court with these documents in the record. In the absence of these documents in the record, the Court cannot examine them.

As an attachment to his Objection to U.S. Statement of Uncontested Facts, Plaintiff provides an unmarked exhibit, which appears to be the second page of Publication No. 1. *See* Trial Brief at 9. This Exhibit briefly describes the appeal process:

> If you do not agree with the examiner's report, you may meet with the examiner's supervisor to discuss your case further. If you still don't agree with the examiner's findings, you have the right to appeal them. The examiner will explain your appeal rights and will give you a copy of Publication 5, *Appeal Rights and Preparation of Protests for Unagreed Cases.* This publication explains your

appeal rights in detail and tells you exactly what to do if you want to appeal.
Plaintiff's Objection, Plaintiff Exhibit G.

**12.** The Supreme Court noted in *United States v. Caceres* that, absent a violation of a statutory or constitutional right, the enforcement of government agency procedures is within the authority of the agency, and not within the authority of the courts. 440 U.S. 741, 751–52, 99 S.Ct. 1465, 1471–72, 59 L.Ed.2d 733 (1979).

**13.** The notice required under 26 U.S.C. § 6331(d)(1) shall be:

> (A) given in person,
> (B) left at the dwelling or usual place of business of such person, or
> (C) sent by certified or registered mail to such person's last known address....

26 U.S.C. § 6331(d)(2).

mand requirement falls under the scope of section 7433 because such requirement represents a regulation promulgated under the Code.

Plaintiff alleges that he did not receive proper notice, as required under 26 U.S.C. § 6331(d)(1), *prior* to his bank account having been levied upon and seized by the IRS on March 3, 1988. Defendant argues that, consistent with the presumption of administrative regularity, the Court should presume that Plaintiff received proper notice. United States' Memorandum at 11. Further, Defendant argues that section 7433 provides no redress because the levy and seizure of Plaintiff's funds on March 3, 1988 occurred before the enactment of the statute on November 10, 1988.[14] Defendant adds that because Plaintiff did not bring this action within two years from the date of the accrual of the cause of action (March 3, 1988), his claim is time barred.[15] *Id.* at 11–12. Lastly, Defendant argues that the fact that Plaintiff received notices from the IRS regarding his nonpayment of taxes, the IRS's intention to levy, and copies of levies served against his bank accounts "establishes that there was not reckless or intentional disregard of the taxpayer's right to receive notice prior to administrative collection of his tax liabilities."

*Id.* at 12. It concludes that if notice were not sent with respect to a particular levy, "it could only be a matter of negligence." *Id.*[16]

The Court finds that a genuine issue of material fact exists as to whether Plaintiff received the notice and demand required under section 6331(d)(1) of the Code. There is no evidence in the record that Plaintiff received such notice prior to the levy and, moreover, Defendant was able to provide copies of levy notices for all the tax years in question except 1981. *Cf. Brewer v. United States,* 764 F.Supp. 309, 317 (S.D.N.Y.1991). The absence of a levy notice for 1981 would suggest that such notice was not sent. Whether the IRS, in fact, sent such a notice is a question for the fact-finder.[17] Moreover, the Court cannot conclude as a matter of law that the absence of notice constituted negligence rather than reckless or intentional disregard of the right to receive such notice. Therefore, the Court will not dismiss Count III of Plaintiff's Complaint as it pertains to the alleged violation of 26 U.S.C. § 6331(d).[18]

## F. *Count IV: Delaying Tactics*

Under Count IV of his Complaint, Plaintiff alleges that Defendant "recklessly

---

**14.** The Court notes, however, that 26 U.S.C. 6331 was in effect at the time of the alleged levy and seizure on March 3, 1988.

**15.** The Court earlier addressed and rejected these arguments. First, the IRS legal notices dated January 20, 1990 (regarding tax years 1981–85) informed Plaintiff that he had two years from the date of the letter to bring an action in federal district court. Second, no cause of action could accrue on March 3, 1988 when the statute in question had not yet been enacted and, hence, the statute of limitations for section 7433 could not begin to run until the effective date of the statute after December 31, 1988.

**16.** Defendant notes that the levy notices are issued by the computer-generated IRS/Automated Collection System and, therefore, computer error cannot constitute reckless or intentional disregard of the internal revenue laws. *Id.* at 13. Given that the Court finds that a genuine issue of material fact exists as to the issuance of the levy notice in question, it need not reach this argument. Nonetheless, the Court notes that it finds little merit in this argument.

**17.** The Court recognizes the presumption of administrative regularity attached to the IRS's actions. That is, "it is presumed, whenever an official has acted, that whatever is required to give validity to the official's act in fact exists." *Borg–Warner Corp. v. Commissioner,* 660 F.2d 324, 330 (7th Cir.1981). *See also United States v. Ahrens,* 530 F.2d 781, 786 (8th Cir.1976) ("[I]t would be unreasonable to presume that the IRS employee who drafted the statutory notice failed to perform the ministerial function of properly recording the assessed amount and the taxable year involved."); *Lesser v. United States,* 368 F.2d 306, 309 (2d Cir.1966). Here, the Court finds, however, that the evidence creating a genuine issue of material fact regarding a pre-levy notice is sufficient on the record to outweigh the presumption of administrative regularity in this case.

**18.** The Court dismisses Plaintiff's allegation in Count III regarding Defendant's erroneous refusal to refund taxes and its illegal assessment and collection of taxes. The Court has already addressed and rejected these allegations under Count II.

and intentionally us[ed] delaying and evasive tactics to prevent [him] from concluding his tax differences in a timely manner." Complaint, ¶ 4. Plaintiff broadly states that "[n]early 6 years have transpired from the initial correspondence from the Plaintiff and no meaningful communication has transpired." *Id.* Plaintiff's only specific examples in this regard include an alleged delay in scheduling a requested audit and a subsequent failure to grant an appeal conference.[19] *Id.; see also* Plaintiff's Objection at 7.[20]

Although Plaintiff alleges that the IRS' denial of his requested appeal conference is nonresponsive, he has pointed to no regulation that requires a specific form of answer to an appeal. The Court finds that Plaintiff's allegations of such "delaying and evasive tactics" fail to state a claim under section 7433, and it will dismiss Count IV.

## IV. CONCLUSION

In sum, the sovereign immunity doctrine bars Plaintiff's claims for alleged constitutional violations and, further, no waiver of immunity is available for Plaintiff's possible common law tort claims under the FTCA in light of section 2680(c). Further, Plaintiff fails to show a genuine issue of material fact under section 7433 for Counts I and II and also fails to state a claim under Count IV and, therefore, the Court will grant Defendant's Motion for Summary Judgment on those counts. A genuine issue of material fact, however, exists under Count III and, therefore, the Court will deny Defendant's Motion for Summary Judgment on Count III.

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment on Count III be, and it is hereby,

DENIED. It is FURTHER ORDERED that Defendant's Motion for Summary Judgment on Counts I, II, and IV be, and it is hereby, GRANTED.

---

**19.** Under Count IV, Plaintiff realleges his Count I allegation regarding the denial of an appeal by the IRS, which the Court has dismissed. In Plaintiff's Objection to United States Motion for Summary Judgment, Plaintiff elaborates on the denial of his appeal conference under "Delaying Tactics," which, again, merely reiterates his allegations under Count I. *See* Plaintiff's Objection at 7–8.

**20.** When asked by Defendant in Interrogatory No. 5 to "describe the delaying evasive tactics used by the [IRS] in preventing [him] from concluding [his] tax differences with the IRS," Plaintiff responded:

> By responding to the Plaintiff's certified letter months after receipt with a letter having no relationship or correlation with the Plaintiff's letter necessitating another certified letter etc. By totally ignoring the plaintiff's correspondence.

United States' Statement, Government's Exhibit C, ¶ 5.