IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

No. 01-40985

———————

GANDY NURSERY, INC.; DENNIS C. GANDY,
doing business as Dennis Gandy Nursery; GANDY
MARKETING AND TRUCKING, INC.; DENNIS
C. GANDY,

                                        Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

                                        Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Eastern District of Texas
--------------------

January 8, 2003

Before DAVIS, SMITH and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This case arises from a tax dispute pitting the government against an individual and two corporations. Plaintiffs-appellants Dennis Gandy, doing business as Dennis Gandy Nursery ("Gandy"), Gandy Nursery, Inc. ("Gandy Nursery"), and Gandy Marketing and Trucking, Inc. ("Gandy Marketing and Trucking") brought suit in district court seeking refunds of certain tax payments and penalty assessments by the Internal Revenue Service ("IRS"), and damages for the IRS's alleged negligent failure to release a tax lien and unauthorized tax collection practices. A jury heard the refund claims and sat in an advisory capacity over the damages claims. The jury rendered

a verdict and issued recommendations in favor of plaintiffs-appellants on all issues. The district court, however, entered an amended final judgment, awarding appellants refunds of some of the penalty assessments and damages for the negligent failure to release a tax lien, but concluding that the appellants were collaterally estopped from raising the claims for a refund from penalties for fraud and that the court did not have subject matter jurisdiction over the claims for unauthorized tax collection practices.

On appeal, appellants seek entry of judgment in accordance with the jury's verdict and recommendations. The government requests that the district court's judgment be affirmed.

## I.

Dennis Gandy is in the tree nursery business. He operated as a sole proprietor until 1991, at which time he formed two corporations: Gandy Nursery, Inc. (to grow trees), and Gandy Marketing and Trucking, Inc. (to market and transport the trees). In 1989, the IRS began investigating Gandy for criminal tax violations for the years 1985, 1986, and 1987. In September 1992, Gandy pled guilty to one count of making and subscribing to a false income tax return for the year 1987, in violation of 26 U.S.C. § 72061(1). The IRS also issued Gandy a statutory notice of deficiency, determining that he was liable for additional income taxes for the years 1985 through 1989, and that he was liable for fraud penalties for those years. Gandy filed a petition with the United States Tax Court contesting these determinations. The tax court found that Gandy had fraudulently under-reported his income on his returns for the years 1985 through 1989 and that, as a result, Gandy had filed income tax returns reporting negative adjusted gross income for the tax years from 1985 through 1989. Thus, the tax court determined that Gandy was liable for fraud penalties for each of those years. The Fifth

2

Circuit affirmed the tax court's determination. *See Gandy v. Commissioner*, 74 T.C.M. (CCH) 1283 (1997). On May 31, 2001, in its amended findings of fact and conclusions of law in the present case, the district court found that the evidence at trial established that Gandy had an outstanding tax liability of $2 million.

According to the government, appellants had neither filed returns for nor paid employment taxes for several taxable periods, but the IRS did not pursue the matter before 1993 because of the ongoing criminal proceedings against Gandy. Appellants note that in April 1993, Gandy discovered that his Chief Financial Officer, Mildred Ann Dozier had been embezzling funds that were to be used to pay employment taxes. Dozier subsequently pled guilty to this alleged embezzlement scheme.

According to appellants, on April 24, 1993, after discovering the embezzlement, their accountant, Tony Morgan, met with Tyler Revenue Officer Jo Kirkham and petitioned for a reasonable cause hearing on the penalties, pending appellants' payment of the underlying taxes, and requested involuntary collection proceedings to be withheld until after the reasonable cause hearing. Appellants claim that Kirkham found reasonable cause existed as to some of the quarters for which appellants had failed to file employment taxes. She assured Morgan that the IRS would not issue a levy on appellants' accounts until after the IRS's Dallas office had determined if reasonable cause existed as to all quarters. Nevertheless, appellants claim that Kirkham began civil collection actions on behalf of the IRS and, in August 1993, levied on appellants' bank accounts.

The government describes the same events differently. It states that in 1993, appellants filed delinquent employment tax returns for several preceding years. Upon receipt, the IRS assessed employment taxes, interest, and late-filing and late-payment penalties against all appellants. Appellants tendered payment of the employment taxes, directing that the funds be applied only to the

3

taxes, and not to the related interest or penalties. They also filed administrative claims for abatement of the taxes and penalties. According to the government, Kirkham testified at trial that during her meeting with Morgan she agreed to refrain from collecting by levy so long as appellants abided by certain conditions, which included paying the interest due on the employment tax by July 6, 1993, and submitted proof that they were remaining current on their employment tax obligations. By late August, Kirkham had concluded that the agreement was no longer effective because appellants had not kept their side of the deal. Thus, in August 1993, the IRS served a levy on the Agricultural Production Credit Association ("PCA"), an institution at which Gandy had deposits, to collect the assessments made against Gandy for penalties and interest. The PCA issued a check to the IRS in the amount of $470,864.23 on August 24, 1993. This sum satisfied all interest and penalties on the employment tax, so the IRS released the liens. In December 1993, the IRS Service center granted Gandy's claims for abatement of the penalties. Thus, it began refunding to Gandy some of the PCA funds that had been applied to the penalties. But before refunding all of the funds, a special agent with the Criminal Investigation Division of the IRS contacted the Service Center with instructions that the abatements of the penalties of the employment taxes be reversed. Thus, the Service Center ceased issuing refunds and reassessed the penalties, without notice or demand. Neither party cites the precise date of the reassessment of penalties. Tax liens were filed in April 1995 and again in September 1995, according to appellants and the record.

On January 12, 1996, appellants filed administrative claims with the IRS to obtain release of the liens. According to appellants, on August 14, 1996, the IRS refused in writing to refund any of appellants' funds that had been applied to the penalties, or to remove any of the liens filed against appellants in April and September 1995. On December 12, 1996, appellants filed administrative

4

claims for relief from wrongful collection actions, but the IRS again refused to stop the collection actions or to remove the liens. According to appellants, the issuance of the tax liens prevented appellants from purchasing property for the expansion of their business. In addition, the liens prevented appellants from selling property or receiving the fair rental value for their property.

Appellants then filed this action in district court on November 13, 1995, and a first amended complaint on January 16, 1996. The government filed its answer to the first amended complaint on February 12, 1996. Although appellants filed a second amended complaint with leave of court on January 24, 1997, no answer was filed immediately.

In their second amended complaint, appellants sought: (1) abatement of the unpaid balance of penalty assessments for late filing of employment tax returns and late payment of employment tax; (2) refund of payments that had been credited toward the penalty assessments; (3) damages under 26 U.S.C. § 7432 for negligent failure to release a tax lien; and (4) damages under 26 U.S.C. § 7433 for unauthorized tax collection practices. In addition, appellant Gandy sought a refund of fraud penalties assessed against him.

Although the deadline to file dispositive motions expired on January 15, 2000, the government filed an answer to the second amended complaint without leave of the court on August 7, 2000, over three years after the second amended complaint was filed and 50 days before trial was scheduled to begin. And, on August 23, 2000, over appellants' objection, the government was granted leave to file a motion for partial dismissal and/or summary judgment, which motion was denied in its entirety.

Appellants had a right to a jury trial on the refund and abatement issues, *see, e.g., Martin v. C.I.R.*, 584 F. Supp. 977, 978 (N.D. Ohio 1984) (discussing the constitutional underpinnings of providing a right to a jury on such matters), *aff'd*, 753 F.2d 1358 (6th Cir. 1985), and the presiding

5

magistrate judge allowed the jury to sit in an advisory capacity over the damages issues pursuant to Rule 39(c), Fed. R. Civ. P. At trial, the jury found in favor of appellants on the employment tax penalties and the 1990 and 1991 fraud penalties, awarding Gandy Marketing and Trucking a refund of $11,156.79, which was the amount of a tax overpayment that had been applied to the employment tax penalties. The jury also awarded Gandy a refund of $105.63, which was the amount of an income tax overpayment that had been applied to the employment tax penalties. In its advisory capacity, the jury found that under 26 U.S.C. § 7432, the IRS had negligently failed to release a lien filed in 1995 as to all three appellants, and that Gandy Marketing and Trucking (but not the other appellants) was entitled to damages in the amount of $16,800. The jury also found that the IRS was liable to Gandy Marketing and Trucking under 26 U.S.C. § 7433, recommending that Gandy Marketing and Trucking be awarded $630,555.97 for unauthorized collection activities. Finally, the jury also found that Gandy was not liable for fraud penalties concerning his individual income tax for 1990 and 1991. With leave of court, the government filed a brief, claiming, *inter alia*, that the district court lacked jurisdiction to hear the appellants' claim for unauthorized collection actions pursuant to Section 7433 because appellants had filed their claim after the two-year statute of limitations period had expired.

In its findings of fact and conclusions of law, the district court reduced the damages award under Section 7433 to $100,000.00 on grounds that this amount was the maximum allowed under the statute for unauthorized collections taking place before July 30, 1996. The court adopted the jury's advisory verdict of $16,800 with respect to the Section 7432 damages awarded. Yet, it rejected the jury's advisory finding that Gandy was not liable for fraud penalties, noting that Gandy underreported his income in those years as a result of claiming net operating loss carry-overs from the tax years 1985 to 1989. Since t he tax court had previously determined that the net operating

6

losses reported on Gandy's returns for 1985-89 were fraudulent, the court held that Gandy was collaterally estopped from claiming otherwise. The district court also found that the government's failure to raise the statute of limitations affirmative defense to the Section 7433 claim resulted in a waiver of the defense and that the court had jurisdiction over the claim.

On February 6, 2001, the government moved to alter or amend the court's findings of fact and conclusions of law. The government stated that its statute of limitations defense is jurisdictional, cannot be waived by the government, and may be raised by the government at any point in the litigation. The district court granted the motion in part, issuing amended findings of fact and conclusions of law that awarded no damages under Section 7433. In its amended findings of fact, the district court found that the only unauthorized collection practices established by the evidence were the August 1993 bank levy and the invalid assessment of taxes, penalties, and interest. The court held that the August 1993 levy could not support a claim under Section 7433 because appellants' failure to file their suit for damages within two years of the levy served to deprive the court of subject matter jurisdiction under Section 7433(d)(3). The court further held that an erroneous assessment of tax cannot support an award of damages under Section 7433.

Appellants filed a motion to alter or amend the judgment and a motion to recover administrative and litigation costs. The district court denied both motions and appellants appealed.

## II.

This Court reviews a jury's or district court's findings of fact for clear error, and reviews questions of law *de novo*. *See Harris v. Parker College of Chiropractic*, 286 F.3d 790, 792 (5th Cir. 2002). Subject matter jurisdiction is reviewed *de novo* as a question of law. *See In re Canion*, 196

7

F.3d 579, 584 (5th Cir. 2002).

## III.

### A.

After holding that the only unauthorized collection practices at issue were the 1993 levy and subsequent assessments, the district court determined that it must dismiss appellants' unauthorized collection practices claims pursuant to Section 7433. As an initial matter, it is well-settled that assessments do not give rise to a cause of action under Section 7433. *See Shaw v. United States*, 20 F.3d 182, 184 (5th Cir. 1994). Thus, the district court properly dismissed claims under Section 7433 pertaining to the assessments.

Furthermore, the district court was correct to hold that it had no jurisdiction to hear claims regarding the 1993 levy, as such claims were in fact time-barred. As appellants have brought this action against the United States, it must be dismissed unless Congress has waived the federal government's sovereign immunity. *See Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Under 26 U.S.C. § 7433(a), Congress waived the federal government's sovereign immunity as set forth below:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

Section 7433(d)(3) further provides that:

8

> Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

It is well-established that, if a waiver of sovereign immunity contains a limitations period, a plaintiff's failure to file his action within that period deprives the court of jurisdiction. *See United States v. Dalm*, 494 U.S. 596, 608 (1990). Appellants argue that the government failed to raise adequately this defense before the trial court, noting that, generally, "the defendant must affirmatively assert a limitations defense at trial to preserve it for appeal." *United States v. Arky*, 938 F.2d 579, 582 (5th Cir. 1991). Here, however, the statute of limitations defense is based on the federal government's sovereign immunity and appellants' failure to bring this action within the applicable limitations period is therefore "not merely a waiveable defense." *Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997). Rather, "[i]t operates to deprive federal courts of jurisdiction." *Id.*[1]

There is no question that any right of action appellants may have had as a result of the August 1993 levy accrued more than two years before they filed this action. Appellants filed their original

---

[1]Appellants attempt to revive their untimely damages claim concerning the August 1993 levy by contending that the government waived the statute of limitations defense when it failed to answer timely the second amended complaint and set forth the statue of limitations as an affirmative defense at an earlier point in the litigation. While doing so might have been more convenient and economical for all involved in this matter, appellants' argument fails as a matter of law. *See In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999) ("It is well settled... that the subject matter jurisdiction of a federal court can be challenged at any stage of the litigation (including for the first time on appeal), even by the party who first invoked it."); *see also Jones v. United States*, 255 F.3d 507, 511 (8th Cir. 2001) ("It is axiomatic that because sovereign immunity implicates our subject matter jurisdiction, the issue may not be waived and the government may raise it at any stage.... Indeed, in cases implicating subject matter jurisdiction, federal courts are obliged to raise the issue *sua sponte* even where the parties themselves have failed to do so.") (internal citations omitted).

complaint in November 1995, which was more than two years after the August 1993 levy.[2] Thus, the district court correctly ruled that it lacked subject matter jurisdiction to hear appellants' Section 7433 claim in relation to the August 1993 levy.

Yet, the 1993 levy and assessments are not the only occurrences that appellants attempted to convince the district court were unauthorized collection actions within the scope of Section 7433. Appellants also asserted that certain liens filed in April and September 1995 and the failure to release those liens constitute unauthorized collection actions under Section 7433.[3] Given the timing of the initial complaint, it is clear that these claims are timely with respect to the government's two-year waiver of sovereign immunity and therefore require further analysis.

Appellants argue that the failure to release a lien is in fact an unauthorized collection activity. If appellants' contention that the failure to release a lien were actionable under Section 7433 as an unauthorized collect action were correct, then Section 7432, which exclusively covers the failure to release liens, would be rendered superfluous. And, it is well-settled in this circuit that "[a]s a matter of statutory interpretation, we do not read one section so as to render another related section superfluous." *Wadsworth v. Johnson*, 235 F.3d 959, 963 (5th Cir. 2000) (citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 876 (1991) ("Our cases consistently have expressed a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same

---

[2] The Section 7433 claim was not asserted until appellants' second amended complaint, filed in January 1997. Nevertheless, the claim relates back to the original November 1995 complaint. *See* Rule 15(c), Fed. R. Civ. P.

[3] Although the district court held that the only actions that could fall under Section 7433 were the 1993 levy and resulting reassessment, testimony and other evidence in the record clearly shows that the IRS filed a lien in April. There is also record evidence of a lien filed in September 1995.

enactment.") (citations omitted)). This result makes for sound policy. If a plaintiff could recover under Section 7432 and Section 7433 for the same failure to release a lien, he would twice recover damages for the same violation. In this case, the court determined that appellants were entitled to an award of $16,800 for the IRS's failure to release liens. Given that that is the amount appellants were damaged, they cannot recover the same amount under a different statute.

Yet, the *filing* of liens can constitute an unauthorized collection activity. *See, e.g., Miller v. Sherrill*, 146 F.3d 1051 (8th Cir. 1998); *Tadych v. Rubin*, 1999 WL 1090820, *8 (E.D. Wis. 1999); *Snyder v. I.R.S.*, 1998 WL 796768, *1 (D.D.C. 1998); *Caparaso v. C.I.R.*, 907 F. Supp. 1235, 1240 (N.D. Ind. 1995); *Simmons v. United States*, 875 F. Supp. 318, 320 (W.D.N.C. 1994); *Gonsalves v. United States*, 782 F. Supp. 164, 170 (D. Me. 1992); *Miller v. United States*, 763 F. Supp. 1534, 1543 (N.D. Cal. 1991). Thus, the district court should have considered damages with respect to the filing of these 1995 liens with respect to Section 7433. Accordingly, these claims fit within the scope of Section 7433 and therefore should be remanded to the district court for further adjudication.

B.

Appellants assert that their claims under Section 7433 are not subject to a $100,000.00 limitation. Yet, it is clear that prior to 1996, Section 7433 provided for a damages cap of $100,000. Although Congress raised this cap to $1,000,000.00 in 1996, *see* 26 U.S.C. § 7433(b), the higher damages cap applies only "in the case of proceedings commenced after the date of the enactment of this Act [July 30, 1996]." Pub. L. 104-168 § 802(b). As this action was filed in November 1995, the district court correctly determined that the $100,000.00 damages cap applies to appellants' Section 7433 claim.

C.

Appellants argue that the district court erred in finding that collateral estoppel applied to the fraud penalties against Gandy. They point out that in order to assert a fraud penalty the government must prove fraud for each tax year by clear and convincing evidence, and that to do so, the government must show that the taxpayer acted with the specific subjective intent to evade a tax at the time the return was filed.

> Circuit authority instructs that the doctrine of collateral estoppel, or issue preclusion,
>
> is appropriate only if the following four conditions are met. First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstances that would render preclusion inappropriate or unfair.

*United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). Appellants argue that because the prior litigation involved the tax years of 1985 to 1989, rather than 1990 and 1991, events during the former period cannot control the determination of fraud for the latter period. However, as noted by the government, Gandy carried over a fraudulent net operating loss for 1985-1989 to his 1990 and 1991 tax returns. This had the effect of substantially reducing his income tax liability for those years. In an earlier proceeding, the tax court found (and this court affirmed the decision) that Gandy had committed fraud in the 1985-1989 tax returns. In reaching this conclusion, the court necessarily found that Gandy knew he had realized taxable income in each year but had reported a net operating loss in order to evade the taxes he knew were due. See *Webb v. C.I.R.*, 394 F.2d 366, 377 (5th Cir. 1968) ("Fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed[.]"). Because the same net operating loss was carried over to 1990 and 1991 from the

12

fraudulent returns from the previous tax years, the issue of whether the net operating loss was fraudulent is identical in the two proceedings. The fraudulent nature of the net operating loss was the central subject of the prior litigation, and there is no allegation by the appellants that the issue was not fully litigated or that special circumstances would render preclusion unfair. Thus, collateral estoppel was properly applied to the determination that the net operating losses reported in 1990 and 1991 were fraudulent.

## IV.

Accordingly, we remand to the district court for further consideration regarding whether the filing of the April 1995 and September 1995 liens may constitute unauthorized collection actions under Section 7433. In all other respects, the district court's judgment is affirmed.

13