United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 14, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))
No. 04-40705

)))))))))))))))))))))))))))

GUANG QIU LI,

Petitioner-Appellant,

versus

CONRAD AGAGAN, ET AL.,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:04-CV-28

_____

Before JONES, Chief Judge, and WIENER and PRADO, Circuit Judges.

PER CURIAM:[1]

Petitioner Guang Qiu Li appeals the district court's dismissal of his petition for writ of habeas corpus and his requests for injunctive relief and mandamus. Because we find that the district court lacked jurisdiction to hear any of Appellant's claims, we VACATE and DISMISS.

_____

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.   Background

In 1989, Li, a native and citizen of the People's Republic of China, entered the United States. Although Appellant applied for political asylum in 1996, because the application was withdrawn, the Immigration Court allowed him to depart voluntarily before April 26, 1998.

On January 15, 1998, Appellant married Chui Fong Chan, a permanent resident of the United States, who became a citizen in November 1998. On March 5, 1998, Chan filed a Petition for Alien Relative. In light of this petition, Appellant requested an extension of his voluntary departure date. The Immigration and Customs Enforcement ("ICE") District Director denied his request.

Because Appellant failed to depart the United States prior to April 26, 1998, his voluntary departure order was transformed into an order of deportation. On April 28, an Immigration Judge ("IJ") denied as untimely Appellant's request to reopen his immigration proceedings.

After Chan's Petition for Alien Relative was approved, Appellant filed an application to adjust his status to that of a lawful permanent resident on June 30, 1999, which is still pending. On September 17, 1999, an IJ denied Appellant's second motion to reopen his immigration proceedings.

In December 2003, ICE took Appellant into custody. Appellant requested a stay of deportation which was denied by an ICE officer on February 4, 1999. Appellant remains in ICE custody and has not

been deported because he is currently awaiting a travel document.

In the district court, Appellant sought to enjoin his deportation until his attorney could obtain a response to his Freedom Of Information Act request to complete an investigation into the effectiveness of the lawyer who handled his 1996 asylum petition. Appellant also sought release from detention and work authorization while his claims were pending. Finally Appellant asked the court to either adjudicate his application for adjustment or to order the Department of Homeland Security (formerly the INS) to adjust his status.

While Appellant asserted that the district court had jurisdiction to consider his claims under the habeas corpus statutes, 28 U.S.C. §§ 2241-2255, the general federal question statute, 28 U.S.C. § 1331, the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 551 et seq., the court found that it only had jurisdiction to consider Appellant's petition for writ of habeas corpus. Addressing the merits of that claim, the court denied the petition. This appeal followed.

II. Standard of Review

Whether a district court has subject matter jurisdiction to hear a case is a question of law that we review *de novo*. *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 636 (5th Cir. 2003).

III. Discussion

-3-

Appellant submits two arguments: (1) the district court had jurisdiction to consider his petition for writ of habeas corpus, and should have granted the writ; and (2) the district court had jurisdiction to address his request for mandamus or affirmative injunctive relief to order the Department to adjudicate his application for adjustment of status. We will address each claim in turn.

A. <u>Writ of Habeas Corpus</u>

With regard to his petition for writ of habeas corpus, Appellant asserts that being held without bond violates the Due Process clause of the Fifth Amendment because the INS has not adjudicated his application for adjustment of status. Additionally, in light of the possibility that his previous counsel might have been ineffective, he challenges the legality of the deportation order against him. Appellees contend that the court's jurisdiction was precluded on three separate grounds: (1) 8 U.S.C. § 1252(g) precludes jurisdiction because Appellant was actually seeking review of the decision to execute a removal order; (2) habeas review is unavailable because Appellant has an adequate remedy by petition for review in this Court; and (3) review of discretionary decisions in deportation proceedings is outside of the scope of habeas review. The district court, however, based its jurisdiction to consider Appellant's petition for writ of habeas corpus on 28 U.S.C. § 2241(c)(1), which permits courts to issue writs to prisoners "in custody under or by color of the authority of the United States."

-4-

Congress and the courts have devoted much attention to the extent of jurisdiction in immigration cases. In October 1996, Congress passed the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), 110 Stat. 3009-546 (1996), which substantially limits judicial review of the Attorney General's immigration decisions. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) ("[M]any provisions of the IIRIRA are aimed at protecting the Executive's discretion from the courts-- indeed, that can fairly be said to be the theme of the legislation."). Title 8 U.S.C. § 1252(g), which serves as a starting point for our inquiry into jurisdiction in this case, reads:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).[2] In *Reno*, the Supreme Court explained that § 1252(g) was not a general bar on jurisdiction, but rather limited judicial review to a narrow class of discretionary executive decrees, decisions or actions to commence proceedings, adjudicate

---

[2] This provision became effective on April 1, 1997 and "appl[ies] without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA § 306(c)(1); 8 U.S.C. § 1252.

cases, or execute removal orders.[3]  525 U.S. at 483 (1999).  The Court opined that  the provision was included "to give some measure of  protection  to  'no  deferred  action'  decisions  and  similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of  judicial  intervention  outside  the  streamlined  process  that Congress has designed."  *Id.* at 485.

The process for obtaining an adjustment of status is delineated in the Code of Federal Regulations.  The Code of Federal Regulations provides that an alien who is in deportation or removal proceedings shall have his application for adjustment of status considered only in those  proceedings.  8 C.F.R § 245.2(a)(1).  Moreover, "[t]he [Legal Immigration and Family Equity] LIFE Act Amendments contain no special provisions for reopening cases under Section 245(i) of the Act (8 U.S.C. 1255(i)) where an alien already is the subject of a final order of removal, deportation or exclusion."  66 F.R. 16383 at 16386.  Hence, motions to reopen based on Section 245(i) are governed by the Department of Justice's rules which contain time and numerical limitations on the filing of such motions.  *See* 8 C.F.R.

---

[3] Because the IIRIRA changed the language of immigration orders, orders of deportation and orders of exclusion are both now referred to as "orders of removal." *See* IIRIRA § 309(d)(2), 110 Stat. 3009 (1996) ( "[A]ny reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation."). Therefore, we use the words "removal" and "deportation" interchangeably.

§§ 3.23(b)(1) and 3.2(c)(2)(now codified at 8 C.F.R. §§ 1003.23 and 1003.2).

Appellees cite *Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000), to buttress their argument that § 1252(g) stripped the district court of jurisdiction over Appellant's habeas claim. In *Cardoso*, we affirmed the district court's application of § 1252(g) to dismiss aliens' requests to compel the Attorney General to adjust their immigration status, permit them to remain in the United States, and provide them with work authorization. *Id.* at 513. We found that regardless of how the plaintiffs characterized their claims, they were seeking to prevent the Attorney General from executing orders of removal. *Id.* at 516. We recognized that, although their prayers might have been different, the plaintiffs' claims were, in essence, an attempt to compel the Attorney General to allow them to remain in the country. *Id.* Therefore, this Court reasoned that if the plaintiffs had been successful, permitting "such challenges would 'lead to the deconstruction, fragmentation, and hence prolongation of removal proceedings at which the Supreme Court concluded that § 1252(g) is directed.'" *Id.* (quoting *Alvidres-Reyes v. Reno*, 180 F.3d 199, 205 (5th Cir. 1999).

We find Appellant's situation analogous to the circumstances of the plaintiffs in *Cardoso* notwithstanding the fact that the plaintiffs in *Cardoso* had all been denied adjustments of status, and Appellant's application has never been adjudicated. Appellant

-7-

essentially seeks review of the decision to execute a removal order against him, a request which § 1252(g) precludes the court from exercising jurisdiction. Because Appellant had a final order of deportation, his only avenue for adjustment of status was by reopening his proceedings. Appellant's adjustment of status has not been adjudicated because Immigration Judges have denied two of his motions to reopen. In other words, there is a process for adjusting the status of an alien in Appellant's position. Because Appellant has been unsuccessful at reopening his deportation proceeding, the April 26, 1998 order of removal entered against Appellant has not been vacated. By confining Appellant until a travel document for his deportation arrives, the agency is executing a valid removal order. Even if Appellant couches his claim as a request for adjustment of status, he is actually seeking review of the decision to execute a removal order against him. Hence, 8 U.S.C. § 1252(g) precludes jurisdiction.

Assuming arguendo that 8 U.S.C. § 1252(g) did not preclude the district court from exercising jurisdiction, habeas jurisdiction does not extend to review of discretionary matters like the one at issue here. "The decision to grant or deny a motion to reopen is purely discretionary." *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550 (5th Cir. 2006); 8 C.F.R. § 1003.23(b)(1)(iv). We have acknowledged that federal habeas jurisdiction does not extend to review of discretionary determinations made by agencies. *See*, *e.g.,*

*Bravo v. Ashcroft*, 341 F.3d 590, 592-93 (5th Cir. 2003). Hence, because Appellant's petition depends on relief within the agency's discretion, and because jurisdiction is precluded by § 1252(g), the district court lacked jurisdiction over Appellant's habeas claims.[4]

B.  Writ of Mandamus

Appellant also asserts that the district court erred by not addressing his request for mandamus or affirmative injunctive relief to order the INS to adjudicate his application for adjustment of status. Appellant argues that this is a case of unreasonable delay, and that the agency should be forced to adjudicate his claim for adjustment. The district court found that it lacked jurisdiction to issue an affirmative injunction or a writ of mandamus ordering the agency to adjust Appellant's status.

The test for whether jurisdiction lies pursuant to the Mandamus Act, 28 U.S.C. § 1361, is "whether mandamus would be an appropriate means of relief." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). "Three elements must exist before mandamus can issue: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available." *Id.*

Taking Appellant's allegations at face value, we find that the

---

[4] We also note that aliens should seek review of deportation orders in this Court. "[F]ailure to pursue [direct review] before filing [a] habeas petition in the district court" will trigger denial on jurisdictional grounds. *Salazar-Regino v. Trominski*, 415 F.3d 436, 445 (5th Cir. 2005).

district court lacked jurisdiction over Appellant's request for a writ of mandamus. As with Appellant's habeas claim, because Appellant had a final order of deportation, and although Appellant characterized his claim as a request for adjustment of status, he is actually seeking review of the decision to execute a removal order against him. Hence, 8 U.S.C. § 1252(g) precludes jurisdiction.

Assuming arguendo that 8 U.S.C. § 1252(g) did not strip the district court of jurisdiction, Appellant failed to establish a clear, nondiscretionary duty owed by the agency, a requirement for exercising jurisdiction pursuant to the mandamus statute, 28 U.S.C. § 1361. Although Appellant attempts to frame his request as an action against the agency for unreasonable delay, 8 C.F.R § 245.2(a)(1) provides that an alien who is in deportation or removal proceedings shall have his application for adjustment of status considered only in those proceedings. Appellant's only avenue for relief is through a motion to reopen. As discussed above, this type of relief is discretionary. Therefore, a writ of mandamus should not issue because Appellees did not owe Appellant a clear, nondiscretionary duty. *See Dunn-McCambell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997)(holding that in order for mandamus to issue, the party seeking the writ had to demonstrate a "legal duty that is a specific, ministerial act,

devoid of the exercise of judgment or discretion.").[5]

IV.  Conclusion

Because we find that the district court lacked jurisdiction to hear any of Appellant's claims, we VACATE and DISMISS.

---

[5] Additionally, we note that Appellant implicitly acknowledged the existence of another remedy, under section 706 of the Administrative Procedures Act.  *See* 5 U.S.C. § 706(1). This, too, would foreclose mandamus jurisdiction which requires that the party seeking the writ has no other adequate remedy.